UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TIRRELL T. BARBOUR                                                                                        Plaintiff

v.                                                      Civil Action No. 3:18-CV-P783-RGJ

DANNY ALLEN, *et al.*                                                                  Defendants

\* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Tirrell T. Barbour was previously incarcerated at the Hardin County Detention Center (HCDC) as a pretrial detainee. He claims that Defendants violated his constitutional rights by failing to refer him for surgery for his hernia while he was incarcerated there.[1] He also claims that Defendant HCDC Jailer Danny Allen violated his rights under Kentucky state law by slandering him. Now before the Court are motions for summary judgment filed by Defendant Allen (DN 26) and by Defendants Stacy Jensen, Amber Durbin, and Carman Blackburn, who are employed by Southern Health Partners (SHP), the entity that provides medical care to inmates at HCDC (DN 27).[2,3,4] For the following reasons, both Defendant Allen's and the SHP Defendants' motions for summary judgment will be granted.

---

[1] Throughout Plaintiff's filings, Plaintiff makes reference to and submits evidence related to a dental condition. However, Plaintiff's claims related to his dental issues are currently being litigated in a separately filed action. *See Barbour v. Terry et al.*, No. 3:19-cv-P129-RGJ. Those claims will, therefore, not be addressed herein.

[2] In their motion for summary judgment, the SHP Defendants clarify that Plaintiff incorrectly identified Defendant Jensen as "Stacy Terry" and Defendant Carman Blackburn as "Carmen Blackburn." The Court will direct the Clerk's Office to correct the names of these Defendants on the docket sheet.

[3] In their motion, the SHP Defendants also argue that SHP itself is entitled to summary judgment. However, upon initial review of this action pursuant to 28 U.S.C. § 1915A, the Court only allowed individual-capacity claims to proceed against Defendants Jenson, Durbin, and Blackburn. Thus, the Court need not address the arguments made in support of granting summary judgment to SHP because SHP is not a Defendant in this action.

[4] On August 8, 2019, Plaintiff filed a motion for an extension of time to respond to Defendants' motions for summary judgment (DN 31). The Court granted Plaintiff's motion and ordered him to file a response within 30 days. Plaintiff did not file a timely response, but on November 12, 2019, he filed a pretrial memorandum (DN 36). The Court has considered the pretrial memorandum in ruling upon the instant motions for summary judgment.

# I. UNDISPUTED FACTS

During the time Plaintiff was incarcerated at HCDC, Defendant Allen was the Jailer; SHP Defendant Jensen was the Advanced Practice Registered Nurse (APRN); SHP Defendant Durbin was a nurse; and SHP Defendant Blackburn was the medical services manager.

On September 28, 2018, Plaintiff was seen by a physician in the emergency room at Hardin Memorial Hospital following a car accident. The emergency room physician evaluated Plaintiff for a "single contusion with abrasion to the right knee. No hematoma." (DN 28-1, Hardin Memorial General Instructions). Plaintiff was advised to apply ice to his knee, to take over-the-counter acetaminophen or motrin, and to follow up with his healthcare provider the following Monday. The instructions also show that Plaintiff was referred for a surgical consult regarding a "chronic inguinal hernia issue." *Id*.

Later that night, Plaintiff was booked into HCDC. His medical screening form reflects that Plaintiff reported that he had asthma, ulcers, a recent head injury, a painful wisdom tooth, and a "Hernia LIH." (DN 28-2, Medical Staff Receiving Screening Form). The form was completed by a non-Defendant nurse.[5,6]

On October 4, 2018, Plaintiff complained of his "hernia" and was seen by a non-Defendant nurse. She examined Plaintiff and concluded that no treatment was warranted at that time but she faxed a request for his medical records.

---

[5] In his amended complaint, Plaintiff claims that the nurse who saw him on this date was Defendant Durbin (whom he calls "Nurse Amber") but he does not dispute in response to Defendant SHP's motion for summary judgment that his medical records reflect that it was actually a non-Defendant nurse who saw him on this date. Thus, the Court concludes that it is an undisputed fact that Plaintiff was seen by a non-Defendant nurse on this date. However, even if this fact were disputed, it is not material to this action.

[6] Relatedly, Plaintiff states in his pretrial memorandum that he was unable to ascertain the names of all SHP employees who treated him while he was incarcerated at HCDC. However, he does not argue that this information was not provided to him during discovery. And, most importantly, he has not shown how having any additional names would affect the Court's decision in any way.

On October 7, 2018, Plaintiff received a standard physical by a non-Defendant nurse. The physical form reflects that Plaintiff told the nurse that he had had an "Inguinal-Hernia" for about eight months. (DN 28-4, Admission Data/History and Physical Form).

On October 9, 2018, Defendant APRN Jensen prescribed Plaintiff an abdominal binder for his hernia and recommended that he follow up with a general surgeon upon release (DN 28-3).

Plaintiff initiated the instant action on October 11, 2018, requesting transfer to a facility that would allow him to have his hernia repaired because his "small intestines are hanging out my scrotum." (DN 1, Compl.). Therein, he stated that "medical authority still haven't set a surgery date." *Id*.

On October 15, 2018, Plaintiff completed a medical request form and described his problem as a "bulge in my testical is enlarged and somedays I can barely get out of bed, I feel pressure on my bladder to urinate." (DN 28-5, Inmate Sick Call Slip). In response to the question of how long he had had the problem, Plaintiff wrote "over one year just gotten worse since car accident." *Id*. The following day a testicular ultrasound was ordered for Plaintiff.

On October 17, 2018, a third-party provider performed a scrotal ultrasound which showed "Unremarkable testicular ultrasound. No acute finding." and "No acute abnormality seen. Normal testicular ultrasound." (DN 28-6, Ultrasound Report).

In the amended complaint, Plaintiff stated that a few days after his first ultrasound he asked Defendant Durbin ("Nurse Amber") if he would "get my surgery now since the ultrasound was conducted she stated (I doubt it we don't do those)." (DN 8, Am. Compl.).[7]

---

[7] Plaintiff's complaint and amended complaint were both signed under penalty of perjury. A "verified complaint . . . carries the same weight as would an affidavit for purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

On November 16, 2018, Plaintiff submitted an Inmate Request Form in which he asked, "Do I have a surgery date set for my hernia in scrotum?" (DN 28-9, HCDC Inmate Request Form).

Plaintiff's progress notes indicate that he was seen by Defendant Jensen on November 21, 2018. Defendant Jensen noted that he had previously had surgery for a hernia on his right side and that he currently had a "L inguinal hernia Reducible." Based upon her examination, she ordered an ultrasound of Plaintiff's left "inguinal area." (DN 28-8, Progress Notes).

On November 23, 2018, the ultrasound that Defendant Jensen ordered was performed by the same third-party provider. On the Ultrasound Report, the non-Defendant physician who conducted the ultrasound stated, "Findings: There is ultrasound evidence of an inguinal hernia. The size of this hernia cannot be measured due to the patients inability to cooperate." (DN 28-11, Ultrasound Report). Plaintiff states that he then told Defendant Jensen that the abdominal binder was not working and asked about scheduling a surgery, but that Defendant Jensen stated, "Take care of it whenever you go home." (DN 8, Am. Compl.).

On December 11, 2018, Defendant Blackburn called the Taylor County Detention Center (TCDC) at the request of Defendant Jailer Allen to verify Plaintiff's report that, while incarcerated there, a surgery had been scheduled for his hernia. (DN 28-8, Progress Notes). However, a TCDC official informed Defendant Blackburn that there was no record of a surgery being scheduled for Plaintiff. Defendant Blackburn related this information to Defendant Allen. *Id*.

In Plaintiff's November 12, 2019, pretrial memorandum, he indicates that he was transferred to Fulton County Jail on February 27, 2019, and that he still has not received surgery for his hernia. The record before the Court indicates that Plaintiff did not complain about his hernia to any HCDC official after November 16, 2018.

4

## II. LEGAL STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. It is against this standard that the Court reviews the facts presented.

## IV. ANALYSIS

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th

Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Constitutional Claims

While the Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment, it is the Due Process Clause of the Fourteenth Amendment that provides the same protections to pretrial detainees. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citing *Richko v. Wayne Cty.*, 819 F. 3d 907, 915 (6th Cir. 2016)). "The Sixth Circuit has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Id*. (quoting *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). Indeed, at this time, the only explicit exception in the Sixth Circuit to the general rule that rights under the Eighth Amendment are co-extensive with rights under the Fourteenth Amendment pertains to excessive-force claims brought by pretrial detainees. *Id*. at 938 n.3 (recognizing that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), abrogated the subjective intent requirement for Fourteenth Amendment excessive-force claims and that the standard which governs pretrial detainee claims may be shifting, but declining to apply the *Kingsley* standard to a pretrial detainee deliberate indifference to a serious medical need claim); *see also Walker v. Miller*, No. 18-3209, 2018 U.S. App. LEXIS 29348 (6th Cir. Oct. 17, 2018) (continuing to apply the traditional standard to a deliberate indifference to a serious medical need claim brought by a pretrial detainee).

An Eighth Amendment claim requires a plaintiff to prove two distinct components - one objective and one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1970) (citations and internal quotation marks omitted). Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id.*

To satisfy the objective component of an Eighth Amendment deliberate indifference claim, Plaintiff must show the existence of a sufficiently serious medical need, meaning that he is "incarcerated under conditions posing a substantial risk of serious harm." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 834). For purposes of this Memorandum Opinion and Order, the Court will assume, despite Defendants' arguments to the contrary, that Plaintiff's hernia caused him to suffer from a serious medical condition sufficient to satisfy the objective prong of the Eighth Amendment standard. *See, e.g.*, *McCallum v. Mich. Dep't of Corr.*, No. 17-cv-2042, 2018 U.S. App. LEXIS 13883, at *7 (6th Cir. May 24, 2018) (making such an assumption); *Bisgeier v. Mich. Dep't of Corr.*, 380 F. App'x 505 (6th Cir. June 8, 2010) (seemingly making same assumption).

The subjective component of the Eighth Amendment standard is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting

7

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). Under the subjective prong, a plaintiff must show: (1) "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner"; (2) the official "did in fact draw the inference"; and (3) the official "then disregarded that risk." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014).

In addition, in *Alspaugh v. McConnell*, the Sixth Circuit held as follows:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

643 F.3d 162, 169 (6th Cir. 2011).

The Sixth Circuit has also held that "[a] plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). A plaintiff must also show that his claim involves more than a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment. *Westlake v. Lucas*, 537 F.2d at 860, n.5.

In light of this jurisprudence and the undisputed evidence, the Court concludes that no reasonable jury could conclude that any Defendant acted with deliberate indifference to Plaintiff's hernia. The record shows that on September 28, 2018, the night Plaintiff was admitted to HCDC, an emergency room doctor had referred Plaintiff to a surgeon for a "chronic inguinal hernia issue." On October 7, 2018, Plaintiff received a standard physical and told the nurse that he had had his hernia for "about eight months." On October 9, 2018, Defendant Jensen prescribed Plaintiff an abdominal binder. When Plaintiff complained on October 15, 2018, that he had a bulge in his testicle that was "enlarged" and putting pressure on his bladder to urinate, a testicular ultrasound

ordered for Plaintiff showed no abnormality. On November 16, 2018, Plaintiff requested that a surgery date be set for his hernia. Defendant Jensen physically examined Plaintiff five days later and noted that Plaintiff had "L inguinal hernia Reducible," and ordered an ultrasound of Plaintiff's left inguinal area. This ultrasound was conducted on November 23, 2018, and showed "ultrasound evidence of an inguinal hernia." The medical records submitted by the SHP Defendants show that Plaintiff did not file another Inmate Sick Call Slip complaining about his hernia during the remainder of his incarceration at HCDC.

Thus, during the approximately two-month period in which Plaintiff complained of his hernia at HCDC, Defendant Jensen physically examined him, ordered two ultrasounds, and prescribed Plaintiff an abdominal binder. Although she did not refer Plaintiff for surgery, or a surgical consult, as Plaintiff's emergency room physician did prior to his incarceration, the evidence shows that she was attentive to Plaintiff's condition, monitored his hernia during the time he was incarcerated at HCDC, and provided treatment. Therefore, the Court concludes that no reasonable jury could find that Defendant Jensen disregarded an excessive risk to Plaintiff's health. Indeed, the Sixth Circuit has held that a "prison doctor's failure to follow an outside specialist's recommendation does not necessarily establish inadequate care" and that "when a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted." *Rhinehart v. Scutt*, 894 F. 3d 721, 742, 743 (6th Cir. 2018) (citation omitted).

The Court next turns to Defendants Durbin and Blackburn. There is no evidence in the record which shows that either of these Defendants ever treated Plaintiff while he was incarcerated at HCDC. Indeed, the only evidence in the record which pertains to Defendant Durbin is Plaintiff's statement that he asked her after his first ultrasound if he would "get my surgery now,"

9

and she replied, "I doubt it we don't do those." Similarly, the only evidence in the record with regard to Defendant Blackburn is that she called the jail where Plaintiff had previously been incarcerated, at Defendant Jailer Allen's request, to find out if Plaintiff had been scheduled for surgery for his hernia while there, as Plaintiff had reported, and that a jail official told her it had no record that such a surgery had been scheduled for Plaintiff. Because a reasonable jury could not find based upon this evidence that Defendant Durbin or Blackburn "subjectively perceived facts from which to infer substantial risk" to Plaintiff; "did in fact draw the inference"; and "then disregarded that risk," *Rouster v. Cty. of Saginaw*, 749 F.3d at 446, the Court will grant summary judgment in their favor.

Finally, the Court turns to Plaintiff's medical claim against Defendant Jailer Allen. Plaintiff argues that Defendant Jailer Allen was deliberately indifferent to his serious medical needs because he would not transfer him back to the facility "that would allow me to have my hernia repaired." However, as stated above, the evidence shows that Defendant Jailer Allen had Defendant Blackburn contact the TCDC, Plaintiff's prior place of incarceration, and that TCDC officials reported that no surgery had been scheduled for Plaintiff's hernia while he was incarcerated there.

In addition, Defendant Jailer Allen has submitted evidence showing that while he was the HCDC Jailer, "any and all medical decisions were made at the discretion of [SHP] and with absolutely no input from any staff member at [HCDC], including myself." (DN 26-10, Allen Aff., ¶¶ 5, 6). The Sixth Circuit has held that "a non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he 'reasonably defer[s] to the medical professionals' opinions.'" *McGaw v. Sevier Cty.*, 715 F. App'x 495, 498 (6th Cir. 2017) (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006)). Several other courts have also

recognized that jail officials are generally entitled to rely on the judgment of medical professionals regarding the appropriate course of medical treatment. *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013); *Fantone v. Herbik*, 528 F. App'x 123, 128 (3rd Cir. 2013); *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *Baker v Cty. of Missaukee*, No. 1:09-cv-1059, 2016 U.S. Dist. LEXIS 44565, at *36 (W.D. Mich. Mar. 3, 2016). Indeed, as the Third Circuit has reasoned, where "a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004).

Thus, the Court concludes that Plaintiff has not presented evidence which would allow a reasonable jury to conclude that any Defendant was deliberately indifferent to Plaintiff's serious medical need and that summary judgment, therefore, should be granted in Defendants' favor on Plaintiff's constitutional claims against them.

### B. State-Law Claim

The Court's grant of summary judgment to all Defendants on Plaintiff's constitutional claims leaves before it only Plaintiff's state-law claim against Defendant Jailer Allen for slander. Where, as here, a district court has dismissed all of the claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c)(3). The decision whether to exercise supplemental jurisdiction over a claim is purely discretionary and depends on judicial economy, convenience, fairness, and comity. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). As a rule of thumb, however, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." *Musson Theatrical, Inc.*, 89 F.3d at 1254-55. Indeed, as the

11

Sixth Circuit has observed: "[T]he Supreme Court's general comity-related principle [is] that residual supplemental jurisdiction be exercised with hesitation, to avoid needless decisions of state law." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 522 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). In light of these guiding principles, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim and will therefore deny without prejudice Defendant Allen's motion for summary judgment as to this claim.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the motions for summary judgment filed by Defendant Allen (DN 26) and by Defendants Stacy Jensen, Amber Durbin, and Carman Blackburn (DN 27) are **GRANTED**. Plaintiff's state-law claim will be **dismissed without prejudice**.

The **Clerk of Court** is **DIRECTED** to change the docket sheet to reflect that Defendant "Stacy Terry" is actually "Stacy Jensen" and that Defendant "Carmen Blackburn" is actually "Carman Blackburn."

Date: February 21, 2020

Rebecca Grady Jennings, District Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of Record
A961.011

12